# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN MICHAEL WEGMANN,    : | |
|     Petitioner                                  : | |
|                                          : | No. 1:22-cv-01529 |
|     v.                                               : | |
|                                          : | (Judge Rambo) |
| STEPHEN SPAULDING,            : | |
|     Respondent                            : | |

## MEMORANDUM

Pro se Petitioner Shawn Michael Wegmann ("Petitioner"), a federal prisoner in the custody of the Federal Bureau of Prisons ("BOP"), is currently incarcerated at Federal Correctional Institution Fort Dix in Joint Base MDL, New Jersey. (Doc. No. 16.) He has commenced the above-captioned action by filing a petition for a writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2241 ("Section 2241"), arguing that he has been denied constitutional conditions of confinement, compassionate release or sentence modification/reduction, a transfer to a correctional institution closer to home, and federal time credits under the First Step Act of 2018 ("First Step Act"). (Doc. No. 1.) He has also filed a motion seeking the appointment of counsel. (Doc. No. 17.) For the reasons set forth below, the petition will be dismissed in part and denied in part, and Petitioner's pending motion seeking the appointment of counsel will be denied as moot.

I. **BACKGROUND**

Petitioner is serving a one-hundred and fifty (150) month term of imprisonment imposed by the United States District Court for the Southern District of Iowa for firearms offenses and for failure to appear after pre-trial release. (Doc. No. 9-1 at 1, ¶ 3.) His current projected release date is February 19, 2026, via good conduct time release. (Id.)

On September 30, 2022, while Petitioner was incarcerated at Federal Prison Camp in Lewisburg, Pennsylvania ("FPC Lewisburg"), he filed his Section 2241 petition in this Court (Doc. No. 1), along with various exhibits (Doc. Nos. 1-1 through 1-9). He argues that he has been wrongfully denied compassionate release or a sentence modification/reduction, transfer to an institution closer to home, and application of federal time credits, as required under the First Step Act. (Id. at 5-9.) In addition, he asserts various claims concerning the conditions of his confinement at FPC Lewisburg, and he argues that he has been denied meaningful access to administrative remedies. (Id. at 2-5.) As for relief, he requests that the Court order his "Compassionate Release/Sentence Modification or Reduction[.]" (Id. at 10.)

In response to the petition, the Court issued a Thirty (30) Day Administrative Order on September 30, 2022, directing Petitioner to either pay the requisite filing fee or to sign and complete an application to proceed in forma pauperis. (Doc. No. 3.) On October 12, 2022, Petitioner paid the filing fee. (Doc. No. 4.) On November

9, 2022, the Court deemed the petition filed, directed service of the petition on Respondent, and ordered Respondent to file an answer, motion, or other response to the allegations contained in the petition within twenty (20) days. (Doc. No. 7.) On November 29, 2022, Respondent filed a response to the petition, arguing that Petitioner's constitutional claims are not properly before the Court, that Petitioner failed to exhaust his administrative remedies, and that the petition is without merit. (Doc. No. 9.) On December 8, 2022, Petitioner filed a reply. (Doc. No. 12.)[1] Thus, the instant petition is ripe for the Court's resolution.

## II. DISCUSSION

As set forth above, Petitioner claims that he has been wrongfully denied constitutional conditions of confinement, compassionate release or a sentence modification/reduction, a transfer to a correctional institution closer to home, and federal time credits, as required under the First Step Act. (Doc. No. 1.) The Court addresses each of these claims in turn below.

---

[1] Petitioner's family members have also submitted letters on his behalf concerning, inter alia, his transfer to a correctional institution closer to home, his time spent in solitary confinement, and his federal sentence being reduced. (Doc. Nos. 10, 11, 14.)

### A. Petitioner's Constitutional Claims

Federal law provides two (2) main avenues of relief for allegations related to incarceration: petitions for a writ of habeas corpus and civil rights complaints. See Muhammad v. Close, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," whereas, "requests for relief turning on circumstances of confinement" are the province of a civil rights action. See id. (internal citation omitted). Thus, whenever the petitioner's "challenge ultimately attacks the 'core of habeas'—the validity of the continued conviction or the fact or length of the sentence—[the challenge] must be brought by way of a habeas corpus petition." See Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002). Conversely, whenever the petitioner's "challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, [a civil rights action] is appropriate." See id.

Here, to the extent that Petitioner is asserting stand-alone Eighth Amendment claims concerning the conditions of his confinement at FPC Lewisburg (Doc. No. 1 at 2, 7-8), the Court finds that those claims do not sound in habeas. As discussed above, a petition for a writ of habeas corpus is, essentially, a vehicle to challenge the very fact or duration of confinement. See Muhammad, 540 U.S. at 750; Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Petitioner's claims concerning, inter alia,

4

visitation, recreational opportunities, and solitary confinement at FPC Lewisburg do not challenge a conviction or sentence. Instead, they challenge the circumstances of his then-confinement at FPC Lewisburg. Thus, because a ruling in Petitioner's favor "would not alter his sentence or undo his conviction," the Court concludes that he is not permitted to proceed with any stand-alone Eighth Amendment claims in this habeas corpus action. See Leamer, 288 F.3d at 542.

Additionally, the Court notes that, since filing his Section 2241 petition, Petitioner has been transferred from FPC Lewisburg in Pennsylvania to FCI Fort Dix in New Jersey. (Doc. No. 16.) Because Petitioner is no longer incarcerated at FPC Lewisburg, the Court cannot grant him the equitable relief that he may be seeking in this action concerning the conditions of his confinement there, such as release from solitary confinement. Indeed, Article III of the United States Constitution provides that "judicial [p]ower shall extend to . . . [c]ases . . . [and] to [c]ontroversies[.]" See U.S. Const. Art. III, § 2. In other words, federal courts are restricted to adjudicating "actual, ongoing cases or controversies." See Khodara Envtl., Inc. v. Beckman, 237 F.3d 186, 193 (3d Cir. 2001). Thus, "[if] developments occur during the course of adjudication that eliminate a [petitioner's] personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996); Keitel v. Mazurkiewicz, 729 F.3d 278,

5

280 (3d Cir. 2013) (citing Blanciak for the same proposition).  Here, a development has occurred during the course of this action: Petitioner was transferred from FPC Lewisburg to FCI Fort Dix.  See, e.g., Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003), as amended (May 29, 2003) (stating that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims").

Accordingly, to the extent that Petitioner's Section 2241 petition seeks to assert stand-alone Eighth Amendment claims concerning the allegedly unconstitutional conditions of his confinement at FPC Lewisburg, the Court will dismiss such claims.

### B. Exhaustion of Administrative Remedies

While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to Section 2241, the United States Court of Appeals for the Third Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to [Section] 2241."  See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000).  Exhaustion is required because it: "(1) allow[s] the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permit[s] agencies to grant the relief requested conserves judicial resources; and (3) provid[es] agencies the opportunity to correct their own errors[, which] fosters administrative

autonomy." See Moscato, 98 F.3d at 761-62 (citations omitted); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981).

However, exhaustion of administrative remedies is not required where these underlying reasons for exhaustion would not be served. See id.(citations omitted); Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016) (unpublished). "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.'" See Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)).

In order to exhaust administrative remedies, a federal prisoner must comply with the procedural requirements of the BOP's administrative remedy process, which are set forth in the Code of Federal Regulations. See generally 28 C.F.R. §§ 542.10-542.19. Under these regulations, a prisoner shall first attempt informal resolution of his complaint with staff and, if the prisoner is unable to resolve his complaint informally, he shall submit a formal, written request on the proper form to the designated staff member. See id. §§ 542.13-542.14. If the prisoner is not satisfied with the Warden's response, the prisoner shall then submit an appeal to the Regional Director, using the appropriate form. See id. § 542.15(a). And, finally, if

7

the prisoner is not satisfied with the Regional Director's response, then the prisoner shall submit an appeal to the Office of the General Counsel, located in the BOP Central Office, using the appropriate form.  See id.  A prisoner is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels.  See id. (explaining that an "[a]ppeal to the General Counsel is the final administrative appeal").

Because federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to Section 2241, a prisoner's failure to exhaust will generally preclude federal judicial review, unless the prisoner can show cause for the default and prejudice from the alleged violation of his rights.  See Moscato, 98 F.3d at 760-61 (explaining that a petitioner's failure to satisfy the procedural rules of the BOP's administrative remedy process constitutes a procedural default and thus bars judicial review (citations omitted)); Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) (recognizing that "[a] procedural default generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice").

Here, the record reflects that Petitioner has filed seven (7) administrative remedies.  (Doc. No. 9-1 at 2, ¶ 5; id. at 10-15.)  In connection with his exhaustion arguments, however, Respondent has only addressed two (2) of those administrative remedies.  (Doc. No. 9 at 9-10; Doc. No. 9-1 at 2, ¶¶ 6-7.)  Respondent, in other

words, has not explained whether or not the remaining five (5) administrative remedies are relevant to this action and, if so, whether or not they have been fully exhausted by Petitioner.

Additionally, the Court observes that Petitioner has filed an affidavit, setting forth various statements, under the penalty of perjury, that he has been attempting to request BP-8, BP-9, and BP-10 forms from staff members at the various federal correctional institutions at which he has been confined, but has been denied such forms. (Doc. No. 12 at 29-31.) Respondent has not addressed this affidavit or any of the allegations that are contained therein.

Accordingly, in connection with this record, the Court is constrained to find that the exhaustion argument raised by Respondent is not properly before the Court at this time. Thus, in an abundance of caution, the Court will proceed by addressing Respondent's remaining arguments concerning the merits of the instant Section 2241 petition.

### C. Compassionate Release or a Sentence Modification/Reduction

Petitioner seeks compassionate release or a sentence modification/reduction under, presumably, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. (Doc. No. 1 at 3-4, 8, 10.) Respondent argues, however, that Petitioner's request is without merit. (Doc. No. 9 at 11-14.) The Court agrees, but for different reasons from those advanced.

"The statute authorizing compassionate release as it exists today was first enacted as part of the Comprehensive Crime Control Act of 1984." See United States v. Brooker, 976 F.3d 228, 231 (2d Cir. 2020) (citing Pub. L. No. 98-473, 98 Stat. 1837, 1998-1999 (1984) (footnote omitted)). "That original statute, unlike the current law, gave [the] BOP exclusive power over all avenues of compassionate release." See id. Indeed, "[f]or over 30 years any motion for compassionate release had to be made by the BOP Director." See id. (citing 18 U.S.C. § 3582(c)(1)(A) (2017)).

However, on December 21, 2018, Congress enacted the First Step Act. See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. A significant difference between the First Step Act and the original statute is the change to compassionate release motions brought under 18 U.S.C. § 3582(c)(1)(A). See Brooker, 976 F.3d 235. As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now provides that a sentencing court may modify a sentence either upon a motion of the BOP Director or upon the defendant's motion after he has fully exhausted all of his administrative rights to appeal the BOP's failure to bring a motion on his behalf or the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. See 18 U.S.C. § 3582(c)(1)(A).

In the present action, the BOP Director has not filed a motion for compassionate release on behalf of Petitioner. Thus, to the extent that Petitioner

seeks to file his own motion for compassionate release or for a sentence modification/reduction—and assuming that he has exhausted his administrative rights to appeal the BOP's failure to file such a motion or has waited the requisite thirty (30) days—the Court finds that his motion has been improperly filed in this Court. As contemplated by 18 U.S.C. § 3582, Petitioner's request for compassionate release must be made to the sentencing court. See United States v. Raia, 954 F.3d 594, 596 (3d Cir. 2020) (explaining that the Court of Appeals lacked the authority to decide the inmate's compassionate-release motion in the "first instance" because the First Step Act requires motions for compassionate release "to be addressed to the sentencing court . . . " (citations omitted)); Barnes v. Jamison, No. 22-cv-00049, 2022 WL 245478, at *2 (M.D. Pa. Jan. 25, 2022) (explaining that the district court did not have jurisdiction to grant the Section 2241 petitioner's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because he was not sentenced in that district court).

However, as demonstrated by the record in this matter, Petitioner was not sentenced in this Court. Rather, he was—as discussed above—sentenced in the United States District Court for the Southern District of Iowa for firearms offenses and for failure to appear after pre-trial release. (Doc. No. 9-1 at 1, ¶ 3.) Consequently, the Court concludes that Petitioner's request for compassionate release or for a sentence modification/reduction under 18 U.S.C. § 3582(c)(1)(A)

11

cannot be decided by this Court. As a result, Petitioner's request for compassionate release or for a sentence modification/reduction under 18 U.S.C. § 3582(c)(1)(A) will be dismissed.

**D.     Nearer Release Transfer**

Petitioner asserts that the BOP is denying him a "Nearer Release Transfer" under the First Step Act. (Doc. No. 1 at 6, 7.) According to BOP Program Statement 5100.09, a "[n]earer release transfer" moves a federal inmate closer to his or her legal residence or release destination, consistent with the inmate's security level. See BOP Program Statement 5100.08, ch. 7, p.4 ¶ 2 (2006).[2] Petitioner argues that the First Step Act included a mandate that, whenever practicable, an inmate should be incarcerated at a correctional facility that "is closest to home and within the five-hundred miles." (Doc. No. 1 at 7.) In connection with this argument, Petitioner requests that the Court order Respondent to transfer him to a correctional facility in Oxford, Wisconsin, which is within five-hundred (500) driving miles of his home. (Id.) The Court, however, is unpersuaded by Petitioner's request.

Title 18, Section 3621(b), of the United States Code generally governs the BOP's authority to determine the place of incarceration for federal prisoners. See

---

[2] This program statement is available at the following address: https://www.bop.gov/policy/progstat/5100_008.pdf.

18 U.S.C. § 3621(b).  Section 3621(b), as amended by the First Step Act, provides, in relevant part, as follows:

> **(b) Place of imprisonment**.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence.[3]

See 18 U.S.C. § 3621(b); First Step Act of 2018, Pub. L. No. 115-391, Title VI, § 601, 132 Stat. 5194, 5237 (2018).

However, Section 3621(b) also provides that, "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under [Section 3621(b)] is not reviewable by any court."  See 18 U.S.C.A. § 3621(b); First Step Act of 2018, Pub. L. No. 115-391, Title VI, § 601, 132 Stat. 5194, 5237 (2018).  In other words, Congress has divested federal courts of jurisdiction to review the BOP's designation of a federal inmate's place of incarceration.  See United States v. Holloway, No. 20-3532, 2022 WL 216976, at *2 (3d Cir. Jan. 25, 2022) (unpublished) (explaining that the district court had "aptly observed [that] the place of imprisonment is committed

---

[3]  Consistent with the plain text of this statute, Petitioner appears to acknowledge that the First Step Act does not create an automatic right to "Nearer Release Transfer." (Doc. No. 1 at 7 (acknowledging that this "is not a requirement . . . ").)

to the BOP's unreviewable discretion under 18 U.S.C. § 3621(b) . . . " (emphasis added)); Touizer v. U.S. Att'y Gen., No. 21-10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021) (unpublished) (concluding that the district court did not err in dismissing the petitioner's Section 2241 petition because "the BOP alone" has the authority to designate the place of a federal prisoner's incarceration and such designations are not reviewable by the courts (citations omitted)).

Moreover, and as already discussed above, a petition for a writ of habeas corpus is, essentially, a vehicle to challenge the very fact or duration of confinement. See Preiser, 411 U.S. at 500.  Petitioner does not argue that his request for a change in the location of his confinement affects either the fact or duration of his confinement.  And the Court fails to see how, under the circumstances alleged here, such a change in the place of his imprisonment could do so.  As a result, the Court will dismiss Petitioner's request for "nearer release transfer."[4]

---

[4] To the extent that the instant Section 2241 petition could be construed as arguing that Petitioner has been wrongfully denied a transition to home confinement under the Coronavirus Aid, Relief and Economic Security Act, commonly referred to as the CARES Act, the Court notes that Petitioner's argument fares no better.  Indeed, "the [BOP] has the sole authority to place a prisoner in home confinement." See United States v. Aguibi, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (unpublished) (citations omitted); United States v. Cruz, 455 F. Supp. 3d 154, 159 (M.D. Pa. 2020) (explaining that "the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director" (citations omitted)); see also Coronavirus Aid, Relief and Economic Security Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2), 134 Stat. 281, (stating that "the Director of the [BOP] may lengthen the maximum amount of time for which the Director is authorized to place

### E. Federal Time Credits

Finally, Petitioner asserts that the BOP is denying him federal time credits that he is allegedly owed under the First Step Act. (Doc. No. 1 at 6-7, 9.) Respondent argues, however, that Petitioner's claim is without merit because he is ineligible to have his federal time credits applied to his sentence. (Doc. No. 9 at 16-17.) The Court agrees.

Under the First Step Act, an eligible inmate, "who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" which "shall be applied toward time in prerelease custody or supervised release." See 18 U.S.C. § 3632(d)(4)(A), (C). More specifically, the First Step Act allows eligible inmates to earn ten (10) days of time credits for every thirty (30) days of successful participation in evidence-based recidivism reduction ("EBRR") programming or productive activities ("PAs"). See 18 U.S.C. § 3632(d)(4)(A)(i). In addition, if the BOP determines that the inmate is at a minimum or low risk of recidivism and has not increased his or her risk of recidivism over two (2) consecutive assessments, then the inmate shall earn an additional five (5) days of time credit for every thirty (30) days of successful participation in EBRR programming or PAs. See id. § 3632(d)(4)(A)(ii).

---

a prisoner in home confinement under [Section 3624(c)(2) of Title 18], as the Director determines appropriate" (emphasis added)).

15

"Successful participation" under Section 3632(d)(4)(A) means that an eligible inmate has participated in EBRR programming or PAs that the BOP has recommended based upon the inmate's individualized risk and needs assessment, and the inmate has complied with the requirements of such programming or activity. See 28 C.F.R. § 523.41(c)(2). However, in certain situations, an eligible inmate will not be considered to have successfully participated in EBRR programming or PAs. See 28 C.F.R. § 523.41(c)(4)(i)-(v). One of those situations is where an eligible inmate opts out of the program or activity. See 28 C.F.R. § 523.41(c)(4)(v) (defining "[o]pting out" as follows: "choosing not to participate in the EBRR programs or PAs that the [BOP] has recommended based on the inmate's individualized risk and needs assessment").

Here, the record reflects that, on March 1, 2022,[5] Petitioner was found eligible for First Step Act time credits (Doc. No. 9-1 at 3, ¶ 14) and that, on October 9, 2022, he was assessed with a total of two-hundred and sixty (260) days of First Step Act time credits earned towards early release (id. ¶ 15). The record further reflects, however, that Petitioner had declined to participate in recommended programming—i.e., the BOP's Residential Drug Abuse Treatment Program

---

[5] It is not clear to the Court that this was the exact date that Petitioner was found eligible for federal time credits under the First Step Act. (Doc. No. 9-1 at 3, ¶ 14 (citing id. at 22-24).) However, neither party disputes this date or Petitioner's eligibility for such time credits. Moreover, this date is immaterial to the Court's ultimate ruling.

16

("RDAP"). (Id.; id. ¶ 16 (explaining that: when Petitioner arrived at United States Penitentiary Lewisburg, he was referred to and screened for RDAP; he was found eligible for RDAP on November 17, 2020; Petitioner declined RDAP on June 9, 2022); id. at 29 (containing Petitioner's history for drug treatment programs, wherein he "DECLINED" RDAP on "06-09-2022"). Because Petitioner declined participation in this recommended programming, the BOP considers him ineligible to have his two-hundred and sixty (260) First Step Act time credits applied to his sentence. (Id. at ¶¶ 15-16); see also Evidence-based Recidivism Reduction (EBRR) Programs and Productive Activities (PA), U.S. Department of Justice, Bureau of Prisons(https://www.bop.gov/inmates/fsa/docs/evidence_based_recidivism_reducti on_programs.pdf) (approving RDAP as an EBBR program made available to First Step Act eligible inmates).

Despite filing a traverse, Petitioner has not presented any argument or evidence that he successfully participated in RDAP or that he has successfully participated in any other qualifying EBRR programing or PAs. Indeed, although Petitioner argues that he has earned a total of eight-hundred and eight (808) accrued program days (Doc. No. 12 at 2; Doc. No. 15-1 at 1), he has not demonstrated to the Court that those program days constitute qualifying EBRR programming or PAs. Moreover, the BOP's October 9, 2022 FSA Time Credit Assessment reveals that, out of the eight-hundred and eight (808) accrued program days, five-hundred and

17

eighty (580) of those days are treated as "Disallowed Pgm Days." (Id.) Petitioner, however, has not adequately addressed, much less contradicted, those disallowed days. (Doc. No. 12 at 2 (setting forth an unadorned assertion that he is entitled to five-hundred and eight (508) disallowed program days).)

Thus, based upon the parties' arguments and the present record, the Court concludes that Petitioner has failed to show that he was improperly denied First Step Act time credits. See Ware v. Quay, No. 1:21-cv-00646, 2021 WL 2550253, at *3 (M.D. Pa. June 22, 2021) (concluding that the Section 2241 petitioner was not entitled to earned time credit under the First Step Act for RDAP because he had "declined" such programming); Sohl v. Warden, FCI Fort Dix, No. 22-cv-04295, 2023 WL 1794871, at *3 (D.N.J. Feb. 7, 2023) (explaining that "[i]nmates eligible to earn FSA credits are not 'successfully participating' in programming if they opt out" (quoting 28 C.F.R. 523.41(c)(4)); see also 18 U.S.C. § 3632(d)(4)(A), (C); 28 C.F.R. 523.41(c)(4)(v). As a result, the Court will deny his request for habeas relief concerning First Step Act time credits.[6]

---

[6] The Court notes that, in both his reply (Doc. No. 12) and subsequent letter to the Court (Doc. No. 15), Petitioner indicates that two-hundred and sixty (260) days of federal time credits have been applied towards his early release and that his release date has now changed to "sometime in 2025." (Doc. No. 15 at 1; Doc. No. 12 at 2.) To the extent that Petitioner has been credited with First Step Act time credits, the Court fails to see how this presents a live, justiciable issue.

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss in part and deny in part Petitioner's Section 2241 petition. (Doc. No. 1.) In addition, the Court will deny as moot Petitioner's motion seeking the appointment of counsel. (Doc. No. 17.) An appropriate Order follows.

Dated: May 25, 2023                    s/ Sylvia H. Rambo
                                       SYLVIA H. RAMBO
                                       United States District Judge